ARTHUR WILDER *v.* C. Q. GILMAN.

*Appeal by Defendant. Offset of more than Twenty Dollars. Good Faith. Petition.*

1. Under the fraud, accident and mistake statute, a defendant who pleads in offset demands exceeding $20, and the County Court on petition find that he pleaded in *good faith*, is entitled to an appeal, although the justice adjudge that he did not plead in *good faith*.
2. R. L. s. 1061, appeal from judgment of a justice of the peace; R. L. s. 1428, fraud, accident and mistake statute, construed.

PETITION. Heard by the court, June Term, 1882, Ross, J., presiding. Dismissed.

*M. Montgomery*, for the petitioner.

*Belden & Ide*, for the defendant.

The opinion of the court was delivered by

REDFIELD, J.  The petitioner presented an offset before the magistrate for more than $20, and swore to his offset, placing his damages at $200.  The County Court found as facts that the pe-- titioner presented to the justice, on trial of the case, said offset, in good faith, and swore to it, and there was no evidence against it; but the justice adjudged that he did not plead said offset in *good faith*, and from the manner the petitioner conducted in regard to said offset, that the justice, *without acting corruptly*, *could* ad-judge that he did not plead the same in *good faith*, and·for that reason denied the petition and *refused* an appeal.

From the facts stated, the petitioner made a *case* before the justice that entitled him, as a matter of legal right, to an appeal. This legal right was denied him by the justice, which the County Court say could have been done without acting *corruptly*.  The court·do not find that he *did* do this legal wrong with corruption.

I.  The statute of jeofail has been in force for centuries, and beneficent in its operation.  It is incident to all human tribunals that judicial power should have place somewhere in the progress of trial of cases, to amend, correct, and restrain, to prevent the mis-carriage of justice.  And more especially in regard to inferior and petty tribunals whose knowledge of legal rights are, presumably, limited; and as the surroundings, and appliances, about such courts are more calculated to subvert and pervert the cause of justice than to establish it, it is the more necessary that this correcting power should exist, and be exercised.  The statute uses general, and quite comprehensive, terms in describing the purpose and scope of such petitions, and was intended to remedy all cases where the petitioner sought an appeal at the proper time and was legally entitled to it, and it was denied to him without his fault. *Good faith*, or the want of it, is not a visible, tangible fact, that can be seen and touched, but rather a *state* or condition of mind which can only be judged of by actual or fancied tokens and signs; and the greatest errors have been committed, and the bloodiest and blackest pages in history written by men who arro-gate to themselves *good faith*, and deny it to others.

The richest ingredient of our inheritance is that there is woven into the texture of our organic law that crime cannot be predicated upon the fancied state of mind; nor fundamental rights lost or denied, except for *overt acts*. *Sin*, whether original or imputed, doubtless exists, and sometimes in the most subtle form, but it has been found wiser and safer to leave that to *free discussion* and the harmless exercise of opinion; that the "subtle disputants on creeds" may have "free course," without power to inflict penalties for error of opinion or a bad state of mind. It is not probable that this justice had a very accurate conception of what "good faith" meant, whether it had reference to the "Nicene Creed" or to some *abstruse process* of the law which he did not fully comprehend. This statute to work *beneficial* results must have a *practical* administration. The petitioner was denied a valuable right, because, as the record is made to say, he did not present his claim in *good faith*, though he swore to the claim and there was no evidence to the contrary. It was somewhere in the woods of this same County, when the pettifogger had free course, and petty justices rendered final judgments in actions for *slander* and other matters without jurisdiction, that an honest suitor sued in trespass for taking personal property, read a case to the very point in the Vermont Reports, wherein the case was stated as *trespass de bonis asportatis*, showing what he had done was lawful and right. The pettifogger, with a show of offended dignity at such outrages upon justice, informed the magistrate that the defendant did not read that case to the court "in good faith. He *knew better;* it had nothing to do with the case in hand; it showed on the face of the opinion of the court that it was a miserable quarrel between two men about a lot of *potatoes*." It hardly need be added that the defendant was cast in his suit for the want of "good faith." And we remember as one of the well authenticated incidents of the Orleans County bar that the late Samuel Sumner, having graduated with honor from college and regularly admitted to the bar, began practice at Coventry. He was soon called to defend a suit at Derby. Sumner felt scandalized and exhibited some passion at the unprofessional treatment he received, whereupon objection was made to Sumner that his pretence of be-

ing an *attorney* was not " in good faith ; that he does not look nor appear like an attorney ; " and neither a defence nor appeal was allowed to Sumner's client. Whether such a miscarriage of justice may be technically and strictly termed fraud, accident, or mistake, or not, it is a *mishap*, when final judgment has come upon a man, and legal rights denied him, without fault on his part. It is more common that justices are so acted upon that they get in the wrong, than that they, of their own volition, act corruptly. And from what is stated in this, it would seem more probable that the mind of the justice, especially all judicial qualities of his mind, by the charges and counter-charges of good and bad faith, was in a state of *catalepsy*, so that he denied the appeal without much considering on what legal ground it could be put. It was a *mishap*, and for all practical purposes may be called " accident or mistake."

The judgment is reversed, and cause remanded to the County Court to allow the petition on such terms as said court shall prescribe.